BC

FILED
9/25/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

KC

**United States District Court**
**Northern District of Illinois**
**Eastern Division**

**ERIC CORDER**,
*Plaintiff,*

v.

**CITY OF CHICAGO,**
a Municipal Corporation, and
Chicago Police Officer **ALEX ALMAZAN**, Star #15048,
individually, *Defendants.*

CASE No. 26-CV-09947

Honorable JOHN ROBERT BLAKEY

Presiding Judge.

## First Amended Complaint at Law

Now comes the Plaintiff, ERIC CORDER, proceeding *pro se*, and complaining against the Defendants, CITY OF CHICAGO, and Chicago Police Officer ALEX ALMAZAN, stating as follows:

### Nature of the Action

1. This is a civil rights action brought pursuant to 42 U.S.C. § 1983, the First and Fourth Amendments to the United States Constitution, and the laws of the State of Illinois.
2. This action arises out of an unconstitutional neighborhood checkpoint, an illegal *Rodriguez* seizure extension, a fabricated "plain view" search, and a retaliatory arrest executed by Chicago Police Officer Alex Almazan, Star #15048, on July 12, 2026.
3. Plaintiff seeks compensatory damages, punitive damages, and litigation costs to redress the severe constitutional deprivations and emotional distress inflicted upon him.

## Jurisdiction and Venue

4. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3) because Plaintiff brings this action to redress violations of his federal constitutional rights under 42 U.S.C. § 1983.
5. This Court has supplemental jurisdiction over the Plaintiff's Illinois state law claims pursuant to 28 U.S.C. § 1367(a) because the state law claims form part of the same case or controversy.
6. Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(b) because the events giving rise to the claims occurred in this judicial district and the Defendants reside here.

## Parties

7. Plaintiff, ERIC CORDER, is a resident of Chicago, Illinois, and at all relevant times he was a citizen of the United States protected by the Constitution.
8. Defendant Chicago Police Officer ALEX ALMAZAN (hereinafter "Defendant Officer") at all relevant times was an officer, agent, and employee of the Chicago Police Department, assigned to the 8th District, acting under color of state law in his individual capacity.
9. Defendant CITY OF CHICAGO is a municipal corporation organized under the laws of the State of Illinois and is the local government unit responsible for the policies, customs, and practices of the Chicago Police Department.

## Statement of Facts

**The Suspicion less Neighborhood Roadblock**

10. On July 12, 2026, at approximately 12:06 AM, Defendant Officer utilized marked Chicago Police Vehicle #7210 and various other Chicago Police vehicles to physically block public roadways, establishing a localized barricade to restrict vehicular access into an eight-block radius of the Leclaire-Hearst residential community following a neighborhood reunion picnic.
11. At the time of Plaintiff's encounter, South Laramie Avenue was not an active crime scene, there was no natural disaster, and no high-security event was occurring on South Laramie Avenue or on South Lawler Avenue, where Plaintiff resides.
12. The primary, self-admitted programmatic purpose of this roadblock was general crime control, crowd footprint management, and neighborhood policing enforcement. It was not a standardized safety, license, or sobriety checkpoint. At a certain hour no one was allowed to drive into the community unless they stopped and showed the officer at the blockade proof of residency
13. On August 19, 2026, before the Circuit Court of Cook County, Defendant Officer Almazan testified under oath that he and his fellow officers were instructed by the Commander of 8th District to set up these suspicion less roadblocks because it was the Leclaire Courts annual neighborhood picnic and they thought there may be trouble.
14. Plaintiff drove safely, committed zero traffic or equipment infractions, and exhibited no behavior providing individualized suspicion of criminal activity.
15. Plaintiff attempted to navigate from West 47th Street to the public street of South Laramie Avenue to reach his residence on an adjacent street, Defendant Officer recklessly

maneuvered Chicago Police Vehicle #7210 in front of Plaintiffs' moving vehicle nearly forcing a collision. Defendant Officer had cut off, blocked, and completely trapped Plaintiff's vehicle.

16. After Defendant Officer blocked Plaintiff's vehicle from entering South Laramie Avenue, Defendant Officer asked Plaintiff if he lived in the community.
17. Plaintiff informed Defendant Officer that he lived in the community and was headed home.
18. Defendant Officer demanded proof of Plaintiff's residency in the community. Defendant Officer refused to allow Plaintiff to enter the community to proceed to his home unless Plaintiff showed proof of residency.
19. Approximately four or more seconds prior to Defendant Officer cutting off and blocking Plaintiff, a private vehicle turned onto South Laramie Avenue unimpeded by Defendant Officer.
20. Defendant Officer wielded unbridled field discretion to permit or deny entry to motorists attempting to navigate South Laramie Avenue.
21. Defendant Officer demanded Plaintiff produce his driver's license, registration, and proof of insurance.
22. For up to five or more minutes, Plaintiff repeatedly asked Defendant Officer what crime or traffic violation he was suspected of committing. Defendant Officer did not cite any articulable facts about a criminal offense or a traffic infraction. Defendant Officer's exclusive concern was whether Plaintiff lived in the neighborhood, showing proof of residency, and whether Plaintiff paid taxes.

23. When Defendant Officer could not cite a criminal offense or traffic violation, Plaintiff cited the United States Supreme Court case *Terry v. Ohio* to remind Defendant Officer of his training and that the seizure was unconstitutional.

24. Plaintiff informed Defendant Officer that he was abusing his authority and could not lawfully interfere with Plaintiff's freedom of movement under the condition that Plaintiff prove where he resides by producing his driver's license, registration, and proof of insurance.

25. Plaintiff informed Defendant Officer that he was going to sue him in court.

**The Rodriguez Violation Prolonged Detention**

26. Subsequently, Plaintiff complied with Defendant Officer's demands by producing his driver's license, vehicle registration, and proof of insurance.

27. Defendant Officer ran Plaintiff's documents through the police database in his patrol vehicle while Plaintiff remained seated in his vehicle, blocked in by Defendant Officer's vehicle. The data check cleared entirely, revealing Plaintiff had a valid license with no warrants, suspensions, or violations. Plaintiff's address on his license reflects that Plaintiff lived in the community on the adjacent street. Defendant Officer original mission was complete.

28. When Defendant Officer executed the computer background check on Plaintiff's identification, the Law Enforcement Agencies Data System (LEADS) explicitly alerted Defendant Officer that Plaintiff was currently on active Federal Supervised Release / Parole.

29. After the data check cleared, Defendant Officer returned to Plaintiff's vehicle and handed back the driver’s license, registration, and insurance. Although the database inquiry was complete, Defendant Officer did not move his patrol vehicle to allow Plaintiff to proceed.

30. Defendant Officer possessed zero independent, articulable facts giving reason to believe that Plaintiff was impaired, had committed a crime, or committed a traffic infraction to justify extending the stop.

31. Defendant Officer further prolonged Plaintiff’s detention by standing at the window and asking, “Man, now was that so hard, are you good?” Plaintiff responded, “Man, I ain't trying to hear that sh-t. Move, Get the f-ck away from me.” Again, Defendant Officer asked Plaintiff, “Are you good?”

**Retaliatory Arrest**

32. Plaintiff explicitly exercised his First Amendment right to criticize Defendant Officer's abuse of authority and restated his intent to seek civil legal remedies in court, responding, “I’ll see you in Civil Court.”

33. Defendant Officer possessed actual, explicit knowledge that any subsequent criminal arrest or formal charge initiated against Plaintiff would trigger an immediate notification to the United States Probation Office, threatening to automatically violate Plaintiff’s federal parole status and subject Plaintiff to immediate re-incarceration in a federal penitentiary.

34. Armed with this specific knowledge of Plaintiff’s extreme legal vulnerability, Defendant Officer intentionally chose to exploit this leverage. Defendant Officer

deliberately proceeded to fabricate a plain view visual observation of an open container of alcohol to construct a fraudulent DUI arrest, intending to inflict maximum legal terror, anxiety, and catastrophic distress upon the Plaintiff.

35. In retaliation for Plaintiff telling Defendant Officer that he would see him in Civil Court, Defendant Officer immediately responded, “Okay, do me a favor and step out of the car.” Defendant Officer then asked, “Are you willing to submit to a field sobriety test?” Plaintiff responded, “No, for what?” Defendant Officer responded, “I saw it, the cup of Miller High Life in the center console.”

36. When Plaintiff stepped out his vehicle, Defendant Officer immediately placed Plaintiff under arrest for DUI.

**Fabricated Plain View and Illegal Search**

37. To manufacture a retroactive justification for the retaliatory seizure, Defendant Officer claimed on the recording that he observed a cup of beer in the center console, which was physically impossible due to the blue face cloth totally covering the center console.

38. In response, Plaintiff immediately ran his cell phone camera over the center console, which captured a blue face cloth completely covering the cup holders and its contents located in the center console. Plaintiff informed Defendant Officer, “You know I’m recording this?” Defendant Officer responded, “Fine, my body cam is recording too, it saw it too.”

39. After Defendant Officer secured Plaintiff in the patrol car, Defendant Officer bodycam footage showed Defendant Officer entered Plaintiff's vehicle. Once inside of Plaintiff's vehicle, Defendant Officer searched through Plaintiff's armrest and then searched under the blue facecloth by lifting it up and then discovered a can of beer in the cupholder located in the center console.

40. From the inception of the encounter, before Defendant Officer blocked Plaintiff's vehicle from proceeding northbound on Laramie Avenue, the blue face cloth completely covered the contents of the cup holder located in the center console, obstructing any visual observation of its contents.

**Excessive Force**

41. Defendant Officer ordered Plaintiff to step out of his vehicle. Upon Plaintiff stepping out of his vehicle, Defendant Officer arrested Plaintiff, applying extreme pressure and pain to Plaintiff's arm and shoulder by twisting his arm up and behind his back. Plaintiff told Defendant Officer, "You are doing too much."

42. In Defendant Officer's written report, Defendant Officer alleged Plaintiff's eyes were red, that he smelled alcohol on Plaintiff's breath, and that in plain view he saw an open "can" of beer in the cupholder. Up to the eight-minute mark in the audio-video recording, Defendant Officer never told Plaintiff he smelled alcohol, nor did he state he saw an open container until after Plaintiff renewed his intent to file a lawsuit. Defendant Officer's shifting description alternating between a "cup" on the scene and a "can" in his written report—demonstrate that his observations were entirely fabricated.

43. Defendant Officer falsely certified that the statements set forth in the citation he issued to Plaintiff were true and correct, falsely claiming Plaintiff violated 625 ILCS 5/11-501(a) for (DUI).

44. Defendant Officer transported Plaintiff to the police station, initiating formal DUI criminal charges and a Statutory Summary Suspension without cause. Defendant Officer had Plaintiff's vehicle towed and impounded, resulting in Plaintiff missing employment and other daily life events.

45. During Plaintiff's post-arrest booking and processing at the station house, surveillance cameras captured personnel only removing a single car key with remote and a set of house keys from Plaintiff's pockets.

46. Defendant Officer Almazan bodycam footage shows him picking up Plaintiff's Altima fob out of the driver's seat after Defendant Officer removed Plaintiff from Plaintiffs vehicle.

47. Defendant Officer intentionally or recklessly withheld, discarded, or destroyed the electronic ignition key fob to Plaintiff's Nissan Altima, and later executed a fraudulent police property inventory receipt claiming "two car key sets" were processed to cover up the loss.

48. Upon arriving at the Chicago Police Impound lot, Plaintiff discovered his vehicle had sustained a completely flat front left tire while in law enforcement custody.

49. Because Defendants withheld or destroyed the Nissan Altima key fob, Plaintiff was locked out of his own vehicle. To retrieve his smartphone, legal documents, and other

essential private property trapped inside, Plaintiff was forced to physically break the small rear passenger quarter window of his own vehicle.

## Legal Counts

**Count I: 42 U.S.C. § 1983 – Fourth Amendment (False Arrest / Unlawful Seizure / Illegal Search) (Against Defendant Officer)**

50. Plaintiff incorporates paragraphs 1 through 49 as if fully set forth herein.

51. Defendant Officer intentionally seized, detained, handcuffed, and arrested Plaintiff without a warrant, without reasonable articulable suspicion, and without probable cause,

52. Defendant Officer conducted a warrantless, non-consensual search of Plaintiff's private vehicle and closed center console space without a valid exception to the warrant requirement, utilizing a fabricated "plain view" pretext.

53. As a direct and proximate result of Defendant Officer's unlawful actions, Plaintiff suffered severe deprivation of liberty, emotional trauma, lost wages, and financial damages.

**Count II: 42 U.S.C. § 1983 – First Amendment (Retaliatory Enforcement and Arrest) (Against Defendant Officer)**

54. Plaintiff incorporates paragraphs 1 through 53 as if fully set forth herein.

55. Plaintiff engaged in constitutionally protected speech under the First Amendment by vocally criticizing Defendant Officer's conduct and promising to file a civil lawsuit. 56. Defendant Officer's decision to extend the stop, fabricate an open container observation, order Plaintiff out of the car, and initiate criminal DUI

proceedings was directly motivated by an intent to retaliate against Plaintiff for exercising his protected speech.

57. But for Plaintiff's protected speech, Defendant Officer would have moved his vehicle and allowed Plaintiff to go home after his license check cleared.

58. As a direct and proximate result of this retaliation, Plaintiff suffered deprivation of freedom, severe emotional distress, and financial injuries.

**Count III: 42 U.S.C. § 1983 – Fourth Amendment (Wrongful Pretrial Detention) (Against Defendant Officer)**

59. Plaintiff incorporates paragraphs 1 through 58 as if fully set forth herein.

60. Defendant Officer violated Plaintiff's rights under the Fourth Amendment by intentionally falsifying police documentation, inventing a plain view open container violation, and fabricating evidence to justify Plaintiff's post-arrest detention.

61. Defendant Officer's deliberate fabrication caused Plaintiff to be unlawfully detained and subjected to legal constraints without a truthful evidentiary baseline.

**Count IV: 42 U.S.C. § 1983 – Monell Liability (Widespread Custom and Practice of Unconstitutional Checkpoints) (Against Defendant City of Chicago)**

62. Plaintiff incorporates paragraphs 1 through 61 as if fully set forth herein.

63. At all times relevant, Defendant City of Chicago, through the command structure of the 8th District Police Station, maintained a widespread, well-settled *de facto* custom and practice of deploying unconstitutional, suspicionless neighborhood roadblocks within an eight-block radius of the Leclaire-Hearst community during the annual neighborhood reunion picnic.

64. This custom has annually been systematically enforced by the 8the District Chicago Police for approximately six or more years, allowing field officers unbridled discretion to profile, filter, and restrict public travel based on residency, age, appearance, and stereotypes in the Hearst Community.

65. The City of Chicago, through its final policymakers, operational hierarchy, and supervisors, delegated final, unreviewable field policy making authority to the Commander of 8th District who conducted the unconstitutional neighborhood filtering roadblocks.

66. The City had actual or constructive knowledge of this routine custom and demonstrated deliberate indifference by failing to train, supervise, or discipline officers to stop these widespread Fourth Amendment violations.

**Count V: 42 U.S.C. § 1983 – Fourth Amendment (Excessive Force) (Against Defendant Officer)**

67. Plaintiff incorporates paragraphs 1 through 66 as if fully set forth herein.

68. Defendant Officer used excessive and unreasonable physical force by violently twisting Plaintiff's right arm behind his back during the arrest.

69. Defendant Officer ignored Plaintiff's explicit verbal warnings that Defendant Officer was causing Plaintiff unnecessary pain when Plaintiff stated on the audio recording, "You are doing too much."

70. As a direct result of Defendant's excessive force, Plaintiff suffered severe pain in his right arm and shoulder joint, an area which requires an upcoming surgical replacement.

**Count VI: Illinois State Law – Malicious Prosecution (Against All Defendants)**

71. Plaintiff incorporates paragraphs 1 through 70 as if fully set forth herein.

72. Defendant Officer commenced and continued a criminal DUI prosecution and a Statutory Summary Suspension proceeding against Plaintiff.

73. These legal proceedings were initiated and maintained with absolute malice and a total lack of probable cause, built entirely upon a fabricated narrative regarding a plain view open container, the smell of alcohol on Plaintiff's breath, and bloodshot eyes.

74. On September 24, 2026, the proceedings ended in Plaintiff's favor when all criminal charges were dismissed, and on August 19, 2026 the summary suspension on Plaintiff's driver's license was rescinded by the Circuit Court of Cook County, based on a total lack of probable cause.

75. Defendant Officer initiated these malicious proceedings within the scope of his employment as a Chicago Police Officer, thereby rendering Defendant City of Chicago liable for the resulting injuries under the doctrine of *respondeat superior*.

76. As a direct and proximate result of the Defendants' actions, Plaintiff suffered significant economic damage, a severe deprivation of liberty, and extreme emotional distress.

**Count VII: Illinois State Law – Intentional Infliction of Emotional Distress (IIED) (Against All Defendants)**

77. Plaintiff incorporates paragraphs 1 through 76 as if fully set forth herein.

78. Defendant Officer's conduct was extreme and outrageous. Defendant Officer intentionally abused his position of police authority to trap a safe driver, fabricate

civil infractions, and invent visual observations on tape to execute a fraudulent arrest simply because his ego was bruised by a citizen exercising protected First Amendment speech. Defendant Officer's extreme conduct was severely compounded by the fact that he possessed actual knowledge of Plaintiff's active federal parole status, meaning Defendant Officer knowingly weaponized a fraudulent arrest to place Plaintiff's lifelong liberty in immediate jeopardy.

79. Defendant Officer knew, or had a high probability of knowing, that fabricating an arrest under these exact circumstances would cause severe emotional distress, panic attacks, and an agonizing fear of a federal parole revocation.

80. Defendant City of Chicago is liable for Defendant Officer's intentional infliction of emotional distress under the common law doctrine of *respondeat superior*.

81. As a direct and proximate result of Defendants' outrageous conduct, Plaintiff suffered, and continues to suffer, severe emotional distress, anxiety, humiliation, and loss of peace of mind.

**Count VIII: Illinois State Law – Conversion and Property Damage (Against All Defendants)**

82. Plaintiff incorporates paragraphs 1 through 81 as if fully set forth herein.

83. Defendants had a strict legal duty to safely inventory, secure, and return all of Plaintiff's private property removed from his person during post-arrest processing at the 8th District Police station house.

84. Defendant Officer intentionally or recklessly withheld, discarded, or destroyed the electronic ignition key fob to Plaintiff's Nissan Altima, and subsequently

executed a fraudulent police property inventory receipt to conceal the conversion of Plaintiff's property.

85. As a direct and proximate result of Defendants' unlawful withholding and destruction of Plaintiff's ignition key fob, Plaintiff was locked out of his vehicle at the impound lot, forcing him to physically break his own vehicle's rear passenger window to retrieve his private property. Plaintiff's vehicle also sustained a ruined, flat front left tire while in the exclusive custody of the Defendants.

**Count IX: Illinois State Law – Respondeat Superior (Against Defendant City of Chicago)**

86. Plaintiff incorporates paragraphs 1 through 85 as if fully set forth herein.

87. At all times relevant, Defendant Officer Alex Almazan was an employee, agent, and appointed police officer of the Chicago Police Department, acting within the scope of his employment.

88. Under the Illinois common law doctrine of *respondeat superior*, a municipal employer is strictly liable for the tortious acts and misconduct committed by its employees while acting within the scope of their employment.

89. While acting within the scope of his employment as a Chicago Police Officer, Defendant Officer committed the Illinois state-law torts of Malicious Prosecution (Count VI), Intentional Infliction of Emotional Distress (Count VII), and Conversion and Property Damage (Count VIII) against the Plaintiff.

90. Because Defendant Officer committed these severe torts and caused extensive physical, financial, and emotional injuries while on active duty, Defendant City of

Chicago is strictly liable for all resulting compensatory damages.

**Count X: Illinois State Law – Statutory Indemnification (Against Defendant City of Chicago)**

91. Plaintiff incorporates paragraphs 1 through 90 as if fully set forth herein.

92. Pursuant to the Illinois Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/9-102), a local public entity is legally directed and required to pay any tort judgment or settlement for compensatory damages entered against its employee, provided the injury occurred while the employee was acting within the scope of his employment.

93. Defendant Officer injured Plaintiff while acting within the scope of his employment as a Chicago Police Officer.

94. Therefore, as a matter of Illinois statutory law, Defendant City of Chicago is legally directed and required to fully indemnify Defendant Officer and pay any judgment or settlement entered against him resulting from his unlawful, malicious, and tortious misconduct on July 12, 2026.

**Prayer for Relief**

**WHEREFORE**, the Plaintiff, ERIC CORDER, respectfully requests that this Honorable Court enter judgment in his favor and against the Defendants, granting the following relief:

A. **COMPENSATORY DAMAGES** against all Defendants, jointly and severally, in an amount to be determined at trial, for loss of liberty, lost wages from his employment at Jewel, vehicle impoundment costs, alternative transit inflation, vehicle repair costs for a ruined tire, a broken electronic key fob, a shattered rear window, and severe emotional distress;

B. **PUNITIVE DAMAGES** against Defendant Officer in his individual capacity in a substantial amount to be determined at trial, for his willful, malicious, and wanton indifference to Plaintiff's federally protected constitutional rights and his deliberate exploitation of Plaintiff's federal parole vulnerability;

C. An award of reasonable litigation costs and, upon retention of legal representation, reasonable attorney's fees pursuant to 42 U.S.C. § 1988; and

D. Any such further relief as this Court deems just, equitable, and proper.

**JURY DEMAND**

Plaintiff, ERIC CORDER, hereby demands a trial by jury on all claims and issues so triable in this matter.

Respectfully submitted,

/s/ Eric Corder, *Pro-Se.*

Eric Corder
4629 S. Lawler Ave.
Chicago, Illinois 60638
(773) 425-8914
Eric.Corder68@gmail.com